Roger K. Powell, E. L. Carpenter, Columbus, Ohio, for plaintiffs.

Joseph Kinneary, U. S. Atty., Columbus, Ohio, Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, Edward J. Snyder, Attys., Dept. of Justice, Washington, D. C., for defendant.

WEINMAN, Chief Judge.

This cause has been tried to the Court without a jury. The Court having considered the pleadings and the stipulations, having heard the evidence and having considered the behavior of the witnesses on the stand, their manner of testifying and the reasonableness and the probability of their testimony, hereby makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiffs acquired 11 shares of stock of Scioto Supply Company in 1952 at a cost of $13,043.82.

2. On July 27, 1955, plaintiffs agreed to sell these 11 shares of stock to Whitaker-Merrell Company and received a cognovit note, dated July 27, 1955, for $29,425.00 the full amount of the sale price.

3. On July 30, 1955, the plaintiffs received a cash payment of $294.25 on the aforementioned note.

**Vernon L. STOUFFER and Juanita G. Stouffer, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 5764.

United States District Court
S. D. Ohio, E. D.
March 28, 1962.

4. On August 1, 1958 a new note, for the balance due, was given to plaintiffs by Whitaker-Merrell Company.

5. A payment of $29,130.75, on April 8, 1959, satisfied the note dated August 1, 1958.

6. Prior to the sale of the stock to Whitaker-Merrell Company, plaintiff Vernon L. Stouffer consulted with Mr. John C. Martin, a senior partner in the firm of Keller, Kirschner, Martin and Clinger, Certified Public Accountants, concerning the proper manner of making the sale and the means of payment for the transaction, and Mr. Martin assisted in the negotiations and the details incidental to the sale.

7. Plaintiffs' 1955 income tax return was prepared by Mr. Yaple of the firm of Keller, Kirschner, Martin and Clinger. The firm was advised by plaintiff Vernon L. Stouffer of the sale of the Scioto Supply Company stock.

8. The firm did not report the sale of the stock on plaintiffs' 1955 income tax return; nor did they report the $294.25 received by plaintiffs on July 30, 1955. The firm's failure to make such disclosures on the 1955 income tax return was not wilful; the failure to disclose was an oversight resulting from the fact that only a small amount of the sale price was received in 1955.

9. In June, 1951, an internal revenue agent raised the question as to whether the purchase by Whitaker-Merrell Company of plaintiffs' Scioto Supply Company stock should be treated as a dividend to them or as a capital gain.

10. On October 15, 1958, a memorandum was submitted to the Internal Revenue Service wherein advice was requested as to the status for income tax purposes of the sale of the Scioto Supply Company stock.

11. Subsequently, Mr. John C. Martin was advised by an internal revenue agent, Mr. DeWitt, that the sale would be treated as a capital gain.

12. On January 27, 1959, Mr. John C. Martin received a letter from internal revenue agent Clyde R. Perkins, which stated that there was an adjustment to plaintiffs' 1955 income tax return for gain on the installment sale of stock. Attached to that letter was a computation of the adjustment which showed that the sale of the Scioto Supply Company stock was allowable on the installment basis and that only the payment of $294.25 received by plaintiffs in 1955 was considered to be taxable in 1955.

13. Plaintiffs paid the tax found to be due by reason of the foregoing.

14. By letter dated July 28, 1959, the Internal Revenue Service proposed that the total amount of the gain from the sale of the stock should be included in plaintiffs' 1955 income.

15. On October 28, 1959, plaintiffs paid the tax and interest, in the amount of $3,985.72, as shown to be due by the aforementioned letter.

16. On October 28, 1959, plaintiffs filed a Form 1040, designated "Amended U. S. Individual Income Tax Return" for 1955, wherein the sale of the Scioto Supply Company stock was reported on the installment method. On the same day a claim for refund was filed for the additional tax and interest paid.

17. On December 19, 1958, plaintiffs executed a Form 872, "Consent Fixing Period of Limitation on Assessment of Income and Profits Tax."

18. Plaintiffs' 1955 income tax return was still open for adjustment when the election was made in 1959 to report the sale of the Scioto Supply Company stock on the installment method.

19. Plaintiffs and their accountants were not aware until 1959 that the sale of the Scioto Supply Company stock had not been reported in the 1955 income tax return.

20. By registered letter dated November 24, 1959, the Internal Revenue Service disallowed the claim for refund.

## DISCUSSION

The question before the Court is whether the plaintiffs are entitled to report the gain from the sale of the Scioto Supply Company stock in 1955 on the in-

stallment method under Section 453 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 453.

Section 453, so far as herein pertinent, provides as follows:

"Installment method

"(a) Dealers in personal property.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

"(b) Sales of realty and casual sales of personalty.—

"(1) General rule.—Income from

"(A) a sale or other disposition of real property, or

"(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a)."

The general rule regarding Section 453 is that where a taxpayer reports the profits from a sale in one year he cannot later claim the installment method. And conversely, where a taxpayer elects to report the profits on the installment method, he cannot later switch away from this method. See Pacific National Co. v. Welsh, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282 (1938) and Wiseman v. Scruggs, 281 F.2d 900 (10th Cir. 1960).

On the date taxpayers' 1955 income tax was due neither Section 453 nor the regulations in effect and applicable thereto expressly specified when a taxpayer was required to make known his election to report income on the installment method. It should be noted that Regulation § 1.453–8, promulgated under Section 453 of the Internal Revenue Code of 1954, which pertains to the requirements for adoption of or change to the installment method, provides, in part:

"(b) SALES OF REAL PROPERTY AND CASUAL SALES OF PERSONAL PROPERTY. (1) A taxpayer * * * who makes a casual sale or other casual disposition of personal property, and who elects to report the income therefrom on the installment method must set forth in his income tax return (or in a statement attached thereto) for the year of the sale or other disposition the computation of the gross profit on the sale or other disposition under the installment method. * * * *"

However, Regulation § 1.453–10(b) provides that the foregoing Regulation "shall apply to taxable years ending after December 17, 1958." Therefore, by virtue of Section 7807 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7807, the Regulation promulgated under Section 44 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 44, being Regulation 118, § 39.44, was in effect and applicable to Section 453 of the Internal Revenue Code of 1954, until Regulation § 1.453–8 (b) became effective. It is clear that Regulation 118, § 39.44 does not expressly specify when a taxpayer must make known his election to report on the installment method.

The Sixth Circuit has held that a taxpayer was not required, under Section 44 of the Internal Revenue Code of 1939, to make an express election in his income tax return in order to receive the benefits of the installment method. Scales v. Commissioner of Internal Revenue, 211 F.2d 133 (6th Cir. 1954) and United

States v. Eversman, 133 F.2d 261 (6th Cir. 1943). These cases considered Section 44 of Title 26 of the Internal Revenue Code of 1939; however, since that statute and Section 453 of Title 26 of the Internal Revenue Code of 1954 are substantially similar, the foregoing cases are instructive. In United States v. Eversman, supra, at page 266, the Court stated:

"We find no force in the argument that Mrs. Eversman was required to make an express election in her tax return, in order to receive the benefits available to her under Sections 44(b) and 44(d) of the Statute. The government would have us read into the statute requirements not found there. No provision to the effect that the taxpayer must have made an express election in a previous taxable year is found in the statute. * * * "

The government, in its attempt to distinguish the instant case from the Eversman and the Scales cases, argues that in each of those cases the government was apprised of the facts of the transactions in timely filed returns. This argument is answered by reference to the statute itself. There is no provision in the statute which necessitates the express election in a previous taxable year. The Fifth Circuit recently considered a case almost identical to the instant one. That Court found that there was no distinction in principal between the Eversman and the Scales cases and the one which it had under consideration, Hornberger v. Commissioner of Internal Revenue, 289 F.2d 602 (5th Cir. 1961). The Court, at pages 605–606, of the opinion stated:

"We think it is worthy of note that the Tax Court itself, subsequent to deciding the Hornberger case now before us has held in Bayley v. Commissioner, 35 T.C. No. 37, that the failure of the taxpayer to claim the benefits of Section 44(b) on his return is not fatal to its allowance where the taxpayer reported the facts touching on the sale of his house, but reported no taxable gain. The Court there said, as we say here:

" ' * * * It is to be observed that neither the statute nor the regulations in force and effect at the time when Federal income tax returns for the calendar year 1954 were due to be filed, specifically required that a taxpayer must make his election on his return in order to have the benefit of the installment method for computing the gain on a sale which qualified as an installment sale.'

"The fact that the Tax Court decided differently in the Bayley case than here because the facts were disclosed in the return evidences a concept that the failure to give the facts touching on the sale (even though an excusable omission, as here conceded) somehow should be penalized. We do not think the law recognizes this concept. If a failure to report an income producing sale is excusable and may be corrected without penalty for all other purposes of the income tax laws, we perceive no reason why, if reported or claimed as an installment sale while the year of sale is still open to adjustment under the statute and if it has not been treated in an inconsistent manner, this should not entitle the taxpayer to installment treatment of the sale."

One further case must be noted, Nunn v. Gray, 196 F.Supp. 305 (D.C.W.D.Ky. 1961), notice of appeal filed October 16, 1961, appeal dismissed upon motion of United States, January 9, 1962, especially since it is recent and within the Sixth Judicial Circuit. The question in that case, which arose under Section 44 of the Internal Revenue Code of 1939, was whether taxpayers who sold real estate during the year 1952 were required to affirmatively elect the installment method of reporting their gain on their return for the year of sale or could wait, as they

did, until the following year to make their election. The Court, at page 307, stated:

"In the present case the taxpayers did not report the details of the sale in their return for the year of sale as was done in Eversman and Scales, and they make no showing that their failure to make an election in their return for the year of sale was without negligence as was found in Hornberger. However, under the precise circumstances of this case it is believed that the liberal rule followed by the Sixth and Fifth Circuits operates to relieve the taxpayers of the heavy penalty which the Government seeks to impose for failure to make an election at a specified time that is not expressly required by either statute or regulation * * *. Here the taxpayers made their election in their 1953 returns for the calendar year in which they first received a substantial payment on a sale that was conditioned so the purchaser could have been relieved of his bargain at any time. No attempt was made to second guess the Government or to treat the sale in an inconsistent manner, and it was reported as an installment sale while the return for the year of sale was still open to adjustment. Under these facts a deficiency should not have been assessed."

The instant case is quite similar to the Nunn case. In each case the taxpayers did not report the details of the sale in their returns for the year of the sale and the return for the year of sale was still open to adjustment. Of course, in the instant case the Court has determined that the failure to report was without any negligence on the part of the plaintiff whereas in the Nunn case the Court stated that plaintiffs made no showing that their failure to make an election in their return for the year of the sale was without negligence. The instant case therefore appears to be a stronger argument for the plaintiffs

position than the Nunn case. The Court concludes that the government should not have assessed a deficiency against the plaintiffs and the plaintiffs are entitled to report the sale of the stock on the installment method.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and of the parties in this action. Sections 1346(a)(1) and 7422 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 1346(a)(1) and 7422.

2. On the date taxpayers' 1955 income tax return was due, neither Section 453 of the Internal Revenue Code of 1954, Title 26 U.S.C.A. § 453, nor the regulations in effect and applicable thereto, expressly specified when a taxpayer was required to make known his election to report income on the installment method. Hornberger v. Commissioner of Internal Revenue, 289 F.2d 602 (5th Cir. 1961); Scales v. Commissioner of Internal Revenue, 211 F.2d 133 (6th Cir. 1954) [Compare Jacobs v. Commissioner of Internal Revenue, 224 F.2d 412 (9th Cir. 1955) wherein that Court noted its disagreement with the Scales case]; United States v. Eversman, 133 F.2d 261 (6th Cir. 1943); Nunn v. Gray, 196 F.Supp. 305 (D.C.W.D.Ky.1961), notice of appeal filed October 16, 1961, appeal dismissed upon motion of United States, January 9, 1962; Section 7807 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7807; Regulation § 1.453–8 and 10(b); and Regulations 118, § 39.44.

## ORDER

It is therefore ordered, adjudged and decreed that judgment should be and it hereby is entered in favor of plaintiffs, Vernon L. Stouffer and Juanita G. Stouffer, and against the defendant, United States of America.

The parties have stipulated that in the event of a decision for plaintiff, they would compute the amount of judgment and submit it to the Court for entry. Accordingly, the entry shall be submitted within ten days.