Peter MAMULA and Dorothy R. Mamula,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 19507.

United States Court of Appeals
Ninth Circuit.

June 7, 1965.

Jack R. White, Carl A. Stutsman, Jr., Hill, Farrer & Burrill, Los Angeles, Cal., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Robert H. Solomon, Attys., all with Dept. of Justice, Washington, D. C., for respondent.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

BARNES, Circuit Judge:

This case is before us on a petition to review a decision of the Tax Court of the United States. 41 T.C. 572 (1964). Taxpayer challenges the decision of the Tax Court upholding respondent's assessment of deficiencies for the taxable years 1959 and 1960. Jurisdiction is conferred on this court by Section 7482 of the Internal Revenue Code of 1954.

The facts are not in dispute. In April 1959, taxpayer sold two parcels of real property which he had acquired on or about May 2, 1958. One parcel, which had a basis of $51,051.63, was sold for $150,000, taxpayer receiving from the purchaser a down payment of $5,000 in cash, plus a promissory note in the amount of $145,000, secured by a deed of

trust. The other parcel, which had a basis of $27,601.70, was sold for $39,000; taxpayer received a down payment of $5,000 in cash, plus four promissory notes in the respective amounts of $18,000, $10,000, $4,000 and $2,000.

Petitioner's tax return for 1959 was prepared by an experienced certified public accountant who, for five years, had regularly prepared petitioner's federal income tax returns. The accountant advised petitioner that the profits from the sale of the real properties could be reported in any one of three ways: (1) a "closed transaction basis," whereby the entire profit could be reported and the tax paid thereon in the year the sales were consummated; (2) a "deferred basis," whereby no tax would become payable until payments equal to the cost of the property sold had been recovered from the purchasers; or (3) an "installment basis," whereby a portion of each dollar received would be reportable as a tax free recovery of cost and the balance as profit, spread over the life of the payments. Pursuant to petitioner's direction to minimize the 1959 tax liability, the accountant prepared the return with an accompanying schedule adopting the "deferred basis" method. This schedule accurately reflected the transactions in question; and, under the "deferred basis" approach, none of the profit was reflected in 1959 taxable income.

A subsequent audit of petitioner's returns for 1959 and 1960 resulted in a determination by respondent that the "deferred basis" method was improper under Treasury Regulations § 1.453-6 because the promissory notes received from the purchasers had an ascertainable fair market value. Section 1.453-6 reads in pertinent part as follows:

"SEC. 1.453-6 *Deferred - payment sale of real property not on installment method.*

\* \* \* \* \*

(2) If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount thereof being the difference between the reduced basis as provided in the preceding sentence and the amount realized therefor. *Only in rare and extraordinary cases does property have no fair market value."* (Emphasis added.)

Upon notification that the use of the "deferred basis" method was to be disallowed, petitioner conceded that the method was inappropriate to the transaction in question because of the ascertainable value of the notes. Petitioner then requested that he be permitted to report the income under the installment method described in Section 453 of the Code.[1] Respondent refused to grant such permission, but instead assessed deficiencies against petitioner by including the entire profit as taxable in the year of sale.

The Tax Court upheld respondent's refusal to permit petitioner to use the installment method in the recalculation of his tax liability. The Tax Court held

[1]. Section 453(b) of the Revenue Act of 1954 provides in material part as follows:

"(b) *Sales of realty* \* \* \*—
(1) *General rule.*—Income from—
(A) a sale or other disposition of real property \* \* \*
\* \* \* \* \*
may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a)."

Subsection (a) permits recognition of income in any taxable year of:
"that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price."
Thus, Congress intended to create a statutory exception favoring certain taxpayers. The statute, moreover, does not provide for a penalty to the taxpayer if the exception is not claimed at a certain time or in a certain way.

that petitioner's attempt to report on the deferred-payment method resulted in a binding election which precluded him from subsequently reaping the benefits of the installment method. The Court supported this position by the precedent established in Pacific Nat. Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282 (1938); Jacobs v. Commissioner, 224 F.2d 412 (9th Cir. 1955); and a series of Tax Court opinions.

As an alternative basis for denying petitioner the use of the installment method, the Tax Court noted petitioner's non-compliance with the regulations promulgated under § 453, which required that the election of the installment method be made in the year of the sale and that the computation of the gross profit of the sale be submitted with that year's return. Treasury Regulations § 1.453–8 (b).

This petition requests that we review the legality of the alternative holdings of the Tax Court.

The authorities relied upon by respondent and adopted in the Tax Court opinion differ in one elementary manner from the facts in the present case, and we deem it of some importance. Prior instances prohibiting a conversion to the installment method have always involved situations in which the taxpayer had initially elected a valid alternative method of reporting income. Thus, in the Pacific National case, supra, the taxpayer elected the deferred payment method in an appropriate situation, where it clearly and properly reflected his income. He later was denied the right to recalculate his tax liability with the installment method. Either method could have been used; petitioner made his choice, and he and the Commissioner were bound by it. The taxpayer had chosen a method which did not minimize his tax liability, but this alone did not suffice to permit him to make a subsequent recalculation where the method originally chosen did clearly reflect income. The Supreme Court stated:

"Change from one method to the other, as petitioner seeks, would re-quire recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns * * *. There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method. By reporting income from the sales in question according to the deferred payment method, petitioner made an election that is binding upon it and the commissioner." 304 U.S. at 194–195, 58 S.Ct. at 858.

We agree with the reasoning of the Supreme Court without reservation, on the facts of the Pacific National case. Once a taxpayer makes an election of one of two or more alternative methods of reporting income, he should not be permitted to convert, of his own volition, when it later becomes evident that he has not chosen the most advantageous method. But we do not think that the Pacific National case, or its reasoning, or any other case cited by respondent, warrants the result reached by the Tax Court in the present case. The controlling facts in the present case are distinguishable from Pacific National and other similar cases to which our attention has been called, and the reasoning of those earlier cases is not appropriate to the case before us.

The present case does not involve an election by a taxpayer to which he is conclusively bound. Indeed, the taxpayer could not be bound by his election for it was a nonallowable choice—it was not allowable and not allowed. No one was bound. We are not here concerned with a taxpayer who uses hindsight to learn that the method he had chosen, though proper, was not the most advantageous to him. We are rather concerned with an instance where the method chosen by the taxpayer is advanced in good faith, and later conceded to have

been improper. At the insistence of the government, not the taxpayer, the prior calculations which adopted the improper method must now be set aside, and new calculations, *of necessity,* must be undertaken. The taxpayer has not been accused of any fraudulent activities nor any criminal violations; he rather has been found to have adopted, in good faith, an incorrect method of income recognition. *No forfeiture or penalty is assessed by law for such a mistake.* The only methods subsequently available to him were the installment method, which he now seeks to utilize, and the closed transaction basis, which would have recognized all the profit in 1959, the year of the sales. Taxpayer wishes to recalculate by using the former method, but the respondent and Tax Court have insisted that he recalculate using the latter method.

Requiring the closed transaction basis does not avoid the undue administrative burden which the Supreme Court emphasized and sought to prevent in Pacific National. A recalculation is necessary no matter which method is adopted. Moreover, requiring the closed transaction basis does not shut off a tax avoidance device of conversion. The initial election was invalid and the conversion has occurred at the urging of the Commissioner. The Commissioner and the Tax Court have penalized petitioner for the mistake he previously made, but such a penalty is not authorized by the statute, John P. Reaver, 42 T.C. 72 (1964), and is certainly not suggested by Pacific National or its related cases. See Note 9, Utah L.Rev. 403 (1964).

Although no case cited by either party is on all fours with the present facts, we think the Tax Court reasoning in John F. Bayley, 35 T.C. 288 (1960), and John P. Reaver, supra, parallels our view. In Bayley, the taxpayer did not choose an improper method of calculation, but rather argued that his gain came within the nonrecognition provisions of the Code. The Tax Court, in the portion of its opinion appropriate to the present controversy, stated at page 298:

"It is our opinion that, in the circumstances here present, petitioners did make a timely election to use the installment method. * * * [T]he first time when petitioners were faced with the necessity of making such an election or choice was when the respondent determined that the gain was includible in income. They then did elect in their amended petition to have the gain computed under the installment method, if it should be determined that the respondent was correct. As above stated, *it is our opinion that such election was timely.*"

See also discussion in Bookwalter v. Mayer, Eighth Circuit, 345 F.2d 476, April 30, 1965, citing The Glidden Co. v. United States, N.D.Ohio, 241 F.Supp. 195.

We find the Tax Court in error in its imposition of a penalty on taxpayer by insisting that he use the less favorable method of income recognition in the course of the compulsory recalculation of tax liability for 1959 and 1960.

We also find that the alternative basis relied upon by the Tax Court to deny petitioner access to the installment method is unwarranted. Taxpayer fully disclosed the sales transactions in question in his tax return for the year of sale, 1959. He at that time chose an invalid method of income recognition; he did not use the installment method, so he of course did not attach a schedule showing the installment method calculations. The Regulations in question cannot be construed to apply in an instance where the taxpayer has not chosen the installment method in the year of sale, but has subsequently been permitted to elect it when the method originally elected has been determined to be invalid. The Regulations can only be reasonably construed as applicable where the taxpayer does elect the installment method in the year of sale; if he so elects, the Regulations set out the nature of the schedules that must be attached to that year's income tax return. In light of the

unique retroactive election of the installment method sought to be used in this case where there has been good faith and a full disclosure of the transactions in the year of sale, it seems inequitable and unfair that the Regulations should be applied literally, contrary to the purpose and in conflict with the intent originally expressed by the Congress in passing the remedial statute.

The judgment of the Tax Court is reversed, and the case is remanded with instructions to permit the taxpayer to recalculate his tax liability for 1959 and 1960 with the use of the installment method of income recognition for the 1959 real property sales transactions.